7 1 8 7 9 United States v. Rodolfo Vazquez-Soto Good morning, Ms. Earl. Good morning, your honors. May it please the court. Jessica Earl from the Mr. Rodolfo Vazquez. May I please reserve three minutes for rebuttal. In Mr. Vazquez's trial, the district court erred in three respects. First, it erred in admitting alleged Facebook photographs which were prejudicial and which the government failed to properly authenticate. Second, it erred in its refusal to provide the jury with a readback of the sole defense witness's 2029 motion for judgment of acquittal. First, your honors, the district court erred in admitting 21 Facebook photographs into evidence. These photographs were unfairly prejudicial in nature and were irrelevant to the charges filed against Mr. Vazquez, and importantly, the dates of the charges filed against Mr. Vazquez, and thus should not have been admitted. But more importantly, in allowing these photos into evidence, the district court completely brushed aside the basic rules of authentication over objections from defense counsel. This was not harmless error, your honors. Is there anything in the record which would help us understand when these photographs were taken? Your honor, there are 21 photographs, and at best we know one of the photographs has a timestamp, what appears to be a timestamp, back when at best, Agent Morales, he was the retired OIG agent who came on the eve of trial to download these pictures, said that he knew that one may have been taken in 2008, and that at best he could tell they were uploaded in 2010. But that was his testimony. The jury did not see any screenshot. They did not have any metadata. They had nothing to corroborate what this agent was saying. At best, what we know is Agent Morales went on Facebook and found the defendant's ex-wife, who had a public Facebook picture, downloaded these photographs, which were provided to counsel, to defense counsel, on the second night of trial. I mean, was there anything like self-authenticating about the photographs? I took a look at the photographs, but I was trying to figure out if I missed something. You know how in the old movies where they hold up the newspaper so that you know that the person has been kidnapped on the date that this particular article was, was there anything embedded in the photographs that would suggest when these things were taken? No, Your Honor. Other than that one photo with the timestamp of 2008. We are not denying that these photos don't portray the defendant, who he is. The problem we have here is that with photographs, context matters. So even if this court were to adopt the least restrictive test, which other circuits have been used, and I would point out that the First Circuit has not adopted yet a test or a means in which it would want social media to be entered into evidence. But even if we were to adopt the least restrictive test, which the government suggests in their brief, their authentication fell flat. The photographs supposedly show him riding a motorcycle through Colombia. Supposedly, yes, Your Honor. Is there any evidence as to what date he was in Colombia? I think to note, if you review the transcripts, it even seems initially when these objections were raised by defense counsel that the district court himself had some qualms about these entering into evidence. He asked at sidebar, does the government have a passport to prove that he was in Colombia on these dates? Is there anything that we can corroborate? And I guess the point sort of got brushed over and he decided to overrule defense counsel's objections. But that was the main issue here, Your Honor, is we don't know when these photos were taken. We don't know what's going on in these photos. If these were regular photographs being entered into evidence, counsel, whether for the government in a civil case or for defense, would still have to enter the photographs in a proper manner. Well, let me ask you this. I mean, because if I recall from the record, there were two periods of time when he was placed on limited duty, which mean he wasn't totally disabled. He was able to perform certain work activities. Is there anything about the diagnosis around the limited medical condition that was inconsistent with his ability to ride a motorcycle? Well, Your Honor, he was first had his first accident in 89. And then he was put on limited duty, which he worked for approximately another decade until 1998 when he suffered what was a new injury. And then the retroactive benefits went 2001 back to the late 90s. So his condition, what is important to note here, allowed him to drive, to walk for an indefinite amount of time. He could squat, he could grasp. This is all things that he discusses in his current capacity evaluation in every 1032, which is the form they have to file annually. So at no point did any doctor tell him that he could not drive a motorcycle. And that's what these photographs in particular were so prejudicial. Because not only were they testified to by Agent Morales, but then the government used all these photographs with the three doctors who testified, showing them these photographs and saying, Well, look, here's Mr Vasquez riding a motorcycle. Here's Mr Vasquez kayaking on one of the most dangerous rivers in Colombia. Here's Mr Vasquez traversing rough terrain. How did we know any of that to be true? So the doctors are providing an opinion based on these unauthenticated Facebook photographs, which then again, the government refers to throughout their closing arguments, referring strictly to these Facebook photos. Look, he can do this. Look, he can't do that. And as far as his his capacity and what he was able to do, he was able to drive for 30 minutes, and there was no specification whether it should be car or motorcycle, Your Honor. Something else that I wanted to point out about these photographs is when going back to your Honor's question about self self, excuse me, he he claimed a disabling back condition. Yes, you're suggesting if you have a disabling back condition, there's no difference between riding a motorcycle and a car. Um, Your Honor, I'm not qualified to give that opinion, but what the doctors testified, look at it from the perspective of a juror. I reasonable juror was heard from Dr Stein, who was the defense witness. Um, the sole defense witness. And he said that riding a motorcycle given the specific medical condition that this man had a specific back condition and muscle spasms was something that he could do. And he explained that there's as long as it was for 30 minute rides and he was writing in a straight up position that that shouldn't affect his ability that he was permitted to drive to the store to get groceries to ride his motorcycle. Um, and even Dr Sign was shown the videos of the undercover videos, not the Facebook photos, the undercover videos, which are little minute 30 seconds snippets of O. I. G. Agents taping him. And Dr Science said nothing about these videos changes my opinion about this person having the disability that he has. So I think the jury could interpret that if this person is riding within 30 minutes, 35 minutes in a straight back normal position, then that's something he could do. The problem became when the testimony that by Agent Morales that these photos showed that Mr Vasquez was doing cross country halls for 300 miles at a time in Colombia with absolutely no basis for that sort of opinion. He was just sort of saying what he thought these photos depicted and what's really dangerous about this going into this new age where social media evidence is becoming more and more prominent in government cases against defendants. But council, aren't you overly complicating this? This was really just a photograph. Photographs have been around forever, and the way of authenticating photographs is not really all that complicated. Uh, and in this instance, the, uh, the witness looked at the photograph with the defendant and say, Yeah, that's that's the that's the defendant there. Now I realize the cross examine about his his lack of knowledge about the circumstances. Uh, the jury could factor that into its decision as to how much weight to give the photographs. Uh, why? It seems to me. Why are you trying to over complicate this? They had to bring in the ex girlfriend to explain how she put them on Facebook. All the circumstances that would have been essential for the introduction of the photographs. Yes, Your Honor. And I would like the court to imagine. Let's say these are random photographs that the Asian found on the side of the road. I think the Sixth Circuit even gives that example. If the court chooses to adopt that, forget this is social media. These are regular photographs. Normally, we would still sit someone on the witness stand that can corroborate. Does this picture fairly and accurately represent X? Why? In the Dominguez case in 2017, when agent sat on the witness stand and all he testified to was I downloaded on the state and here it is for the jury to give it the weight. It decides he did not pepper his testimony with what he believed was going on in these photographs. So even if we take the social media context out of it, which I would urge the court not to do, because I think it's an important consideration here that these are from the Internet. These could have been altered. But even if we just consider them to be photographs, I don't think we're over complicating it when the agent sits to testify about what he believes is going on in the picture. And to give your honors a more severe hypothetical, let's say a young man at 17 years old on Instagram throws up a gang symbol in a picture because he's trying to be cool or impress his friends. Years down the road, he is charged in some sort of RICO or very severe drug conspiracy case with violence associated with a certain gang. What we're asking, what the government's asking the court to do is we're just going to allow government agents to go in, download Instagram pictures, and then sit on the witness stand with no context, with no corroborating information, and testify to the jury that that young man must be involved in a gang because look what he's doing here. The government in this case is asking the court to craft an exception to Rule 901. And Rule 901 is perfectly capable of dealing with social media evidence, no matter which test this court decides to adopt, be it the least circuit or a more restrictive. Yes, your honor. Wasn't the government just trying to show that he was riding a motorcycle? If that had been the government. By showing those photographs? Your honor, I would say if that. Just answer my question. Yes, yes, that's what they were trying to do. Why isn't the evidence properly for that purpose? Because what happened in this case, as I mentioned, was the fact that the agent got up and testified as to what he believed was being depicted in these photographs. For their objection to that? Yes, this was all done at sidebar on two separate dates, and then I believe one of the trial counsel got up and objected when the first photo was entered, and the district court judge said your objection is overruled throughout this entire testimony. I'm letting all 21 photos in the jury. This objection has been dealt with. So yes, this was objected to on the that he is not as disabled as he claims because he's riding a motorcycle. So they present a photograph of him riding a motorcycle. Yes, your honor. What else is needed? The problem we have here. For that purpose? I have about 10 seconds. Let me see if I can answer your honor's question. If the government had just entered this photograph and showed him on a motorcycle, then we might be in a different situation. But that's not what happened here. And if I can just the government shows him on a motorcycle, has an agent with no knowledge testifying that, for example, one picture he's on his motorcycle, and there appears to be luggage on the back of the motorcycle. The agent testifies. That means he drove for eight hours a day cross country on rough terrain in Colombia. And then in closing arguments, the government says, you know, Mr. Vasquez was doing motorcycle diaries throughout South America and you saw it because of the pictures. So it wasn't just a picture of him on a motorcycle, which the doctor testified that he could do. This was insinuating to the jury with no extrinsic corroboration. Mr. Vasquez was partaking in activities that he was not supposed to do. They were insinuating this to the jury with absolutely no corroborating evidence. So, well, the picky one is, what was the basis of the assertion as to the weight of the helmet? Was there a concession that the helmet weighed three or four pounds? Yes, I think that that was something that they had. This motorcycle issue was so central to the government's case that they brought the manager from the Suzuki from the Caribbean to testify in a social security case. And he talked about how much helmets weigh. And there was some cross examination about, well, there are lighter weight helmets, there are heavier weight helmets. And then Mr. Vasquez used a lighter weight helmet. And I believe that they asked all the doctors about that. And each doctor gave his differing opinion about the use of the helmet. All right. And the other thing is, since I have no idea what your client looks like, I mean, for me, I kept trying to figure out in terms of your relevance argument, the date or the timeframe that these photographs were taken, it seems to be important. Because if they were taken when he was in his 20s and robust and healthy, then they're totally irrelevant to anything that the court is considering. And so that's why I'm just trying to pin down, I mean, you've pointed to the date stamp, but is there anything else? Because even when you read the Rodriguez-Soler, or is it the Dominguez, I'm sorry, the Dominguez case, even though the court said it didn't really matter when it was uploaded, it was clear from that opinion that it was important to the court that the pictures that were represented, regardless of when they were uploaded, were pictures from the relevant timeframe of the indictment. And so that's what I'm trying to figure out here. How do we know that these photographs are relevant to the appropriate timeframe of the indictment here? We don't. And that's one of the strongest arguments, I believe, made by the defense in their objections. We have no idea when these photos are from. You acknowledged the 2008 date stamp. Yes, Your Honor. Was it only on one of the photographs? It was on one of the photographs. And he's dressed similarly in other photographs. So the government made the insinuation that it's one trip, that this all must have been more or less in 2008. But we don't know. Would you agree that if there was a reasonable basis for concluding that these were photographs from 2008, that they would be relevant to the claim here that the defendant was knowingly and intentionally making false statements about his physical condition? Absolutely not, Your Honor. Why not? Because, as you acknowledge, it was really from 1998. Wasn't it 1998 that he experienced the second event that really did totally disable him? So if that's true, and you have photographs that he's engaged in what can be characterized as vigorous physical activity, that that's inconsistent with Why wouldn't 2008 be a relevant time period? Your Honor, the government in this case, despite the fact that Mr. Vasquez received Social Security benefits starting in 1998, specifically chose to charge February to August of 2013. He is only accused of making a false statement in 2013, in his 1032 and then his current capacity evaluation. So the government's trying to say, well, this demonstrates his mens rea leading up to 2013. But what our argument would be is these photographs are not relevant for the date he gave that interview to Cassandra Klein, who was the undercover agent who conducted that interview. And importantly, snapshots of his life showing him in things that we don't know anything more about, he could have completely been in compliance with what his limitations were. He was allowed to drive 30 minutes. He was allowed to walk for indefinite periods of time. So a little snapshot of his life without this additional testimony that was very prejudicial, the pictures become very relevant in that aspect because you're saying here, look, this picture of him posing next to a waterfall means that in 2008 he was walking more than he was supposed to walk. I think that that's something that the jury should not have heard in this case and was very unfairly prejudicial to Mr. Vasquez. So just one question. This whole notion about the travel diary, is the travel diary just based upon the photographs because there were a series of photographs which the government is asserting had they been the same trip? Yes, the government makes an insinuation to the jury in closing arguments that this is a motorcycle diaries trip. And he, because they're dressed the same, so the government assumes that because one photo has 2008 and he's wearing the same shirt in one photo that he is in another photo, that it must be on the same trip. But again, that's not corroborated by any extrinsic evidence. Why does it have to be? I mean, it's an argument. The jury doesn't have to believe it. But why can't you make that argument to the jury? Your Honor, I just think that these photos were never properly authenticated and brought in to begin with. I don't think you can make an argument about something that you have no idea, no agent, no anybody sat on the witness stand to corroborate. If this was a regular photograph, I would hope that a district court would not have permitted this kind of evidence to come in in the first place. This shouldn't have been argued in closing. And it was what swayed the jury. This was the heart of the case for the government. Thank you. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Francisco Vazquez-Martinez for the government. Your Honors, the district court properly denied Vazquez's motion for acquittal and properly admitted the photographs of him partaking in a cross-country motorcycle trip in Colombia. The photographs were relevant in this particular case. What is your argument that they're properly authenticated? Your Honors, the government met its burden, its low burden of authentication in this case, by sitting the agent down, the agent who downloaded these photos from the Facebook page. It's clear that it's him. Yes. But it still has to be during a relevant time frame. Your Honors, the indictment, the specific counts related to his statements in 2013, the indictment did state that he had been receiving benefits since 1998 in excess of $500,000 in benefits, I believe. And so the government's theory in this case was never that he was disabled and suddenly he was able to because in 2013, as the video showed, he was riding these motorcycles rather. The government's theory was always that he could always ride these motorcycles, that this was a long-term, long-standing mental state of his that predated 2013 and continued to 2013. And then the photos further undercut his defense that, you know, sometimes I have good days, sometimes I have bad days. I guess what I'm trying to find out, okay, the only evidence we have as to the relevant time frame is the date stamp. If the date stamp were not there, what would your argument be to make it time relevant? The photographs themselves, Your Honor, you can tell from their substance, their quality. Yeah, but how do we know it's not before 1999? Your Honors, the defendant was at trial, and they could make a reasonable inference based on how he looks now in terms of how a person naturally ages throughout time, whether or not those photos were from 5 years ago or 10 years ago or 15 years ago, as well as from the quality of the photo itself. So that's a matter of authentication as well. They were Facebook, right? I'm sorry? They were social media photographs. They were photographs, Your Honor. The Facebook aspect is a red herring in this case. We, the government, weren't seeking to authenticate the social media page or attribute the posting itself to a particular person or authenticate who took it. It was just a matter of what are these pictures depicting, and it was that Vasquez was riding motorcycles as early as 2008 on cross-country motor trips throughout Colombia. And indeed, in closing arguments, Your Honors, the defendant said, yes, this is Vasquez, and yes, this was in Colombia. But what is their only argument was that it was irrelevant because of the time frame. But as the government has maintained, its theory has always been that there was a longstanding mental mens rea. The fact that the government only charged 2013 is more about the fact that that was for the relevant time period of its investigation. That time frame is when they had that. Do the surveillance videos, do they show him on a motorcycle at all? Yes, Your Honor. They do. This was, excuse me, after Vasquez told his doctors and the workers' compensation representative that he had a disability so severe that he couldn't even turn his neck without turning his torso along with it, he was caught on video on three consecutive days, and including, Your Honors, the day of his medical examination and on the day of his interview, riding this motorcycle, absorbing the impact of potholes and road bumps, and turning his head right and left at intersections to look for ongoing traffic. And the doctors themselves said when they saw these videos in open court, Dr. Faura and Dr. Rojas specifically, that in view of these videos, their diagnosis of disability was incorrect, basically. They took them back. They said this person is not disabled for purposes of the disability benefits that he's receiving. And so, yes, Your Honors, the videos are the centerpiece of the government's case. So in part, that's why you say that even if these photographs were improperly emitted, it was harmless error because through the surveillance video, the jurors already saw him on a motorcycle and doing other strenuous physical exercises. Is that correct? Correct, Your Honor. Not only that, but there were videos of the same day that he told his doctors and the workers' compensation representative that I'm not this. These certain activities, they cause pain and discomfort at that moment. Those videos were taking just a couple hours from those statements to the doctors and to the representatives. And so it goes to the heart of the matter that there were misrepresentations and false statements by Mr. Vasquez to these individuals in order to get these benefits improperly, illegally. The opposing counsel says in closing argument that the government did talk a lot about the 2008 Columbia trip. In other words, the government put a lot of emphasis on that trip. Is that a fair characterization of the closing argument? Because if you did that, it gets a little harder to argue that it was harmless error if you thought it was so important to focus on it in the closing argument. Well, it was important, Your Honor, because as I stated, the government's theory was that this was an ongoing misrepresentation to the Department of Labor and Workers' Compensation. And it was relevant in the sense that it was important to highlight this because of the defendant's seeming defense that he had good days and had bad days. And this went to showing his consistent behavior and his consistent daily activities, which, by the way, he also said that his disability was so severe that his daily activities were limited and impaired. And this went to show that, no, they were not. So it does sound like the photos of the Columbia trip were important to the theory of the government that this was a continuing misrepresentation that had gone on for years. Yes, Your Honor, to the theory of the case. But the point is, Your Honor, is that a photograph cannot be more prejudicial than an actual video, an actual video showing him moving, absorbing the impacts of potholes and speed bumps, moving his neck with perfect ease without turning his torso along with it as he had claimed. And so that is why the government maintains that even though it relied on these photographs correctly, the government would suggest, but even absent those photographs, there was still sufficient evidence to find him guilty on the counsel on which the jury did find him guilty of, Your Honor. As for – if I could have a moment, Your Honor. As to the point of whether or not the photographs were properly authenticated as being taken in Columbia, Your Honor, those matters can also be authenticated by a view of the photographs, the signs in commercial establishments. I believe the people had T-shirts referring to a Columbia motorcycle club. And furthermore, he himself – the defendant did not testify. He himself at these interviews stated that during this time that he was receiving these benefits,  so in that – so it was consistent with the other evidence that these were photographs taken in Columbia. But if – Excuse me, that strikes me as important. You said he – in interviews, he acknowledged that he lived in Columbia for a period of time? Yes, Your Honors.  I don't remember the exact time period. It was, I believe, in the interviews, he just made a comment that he was like – that he constantly traveled to Columbia and lived there for a period of time throughout the years of his being under this disability program. So it's consistent. And all of this was in evidence? Yes, I believe so, Your Honor. That's correct. It was in the – it was at the – I believe it was at the interview with the workers' compensation. It was through her testimony that she said that these were the things that he was citing. Okay. I'm going to judge the case. I think that seems important. These are – did the government introduce all of his disability records from the start? The – not from 89, but I do – it did present the medical records, the 1032s and the medical reports and the accompanying medical reports back to 2001. And the relevance and proper presentation of that is on dispute. And you're saying that in those records, there's reference to him going back and forth to Columbia? I'm not sure if it's in those records or in the 2013 interview, but it is in the evidence, Your Honor. I can supplement the court with a Rule 28 to providing specific citations to the record for that, Your Honor, if you would like. Okay. We will do that then, Your Honor. Finally, Your Honors, on the point that Vasquez has made that he was simply relying on the doctor's diagnosis of disability and that he can be not put at fault for simply saying, I am disabled because the doctors say that he was disabled, he cannot shield himself with these medical reports when they are based on his own self-reports. As the doctors testified at trial, their reports are based on subjective and objective components. And that subjective component is based solely on Vasquez's expressed complaints of pain and discomfort. And that is why they determined that, including Dr. Rojas initially, that despite there being inconsistency with what Dr. Vasquez was telling him and the objective results of the testing, he nevertheless initially said that he could still go to work for a limited four-hour period. However, of course, that determination by Dr. Rojas, he later amended it after watching the videos, specifically the video that was taken within two hours of him having examined him. Having seen that, he said he was 100% able to work. As a matter of curiosity, I'm sure this is in the record, these claims went on for years. What brought the defendant to the government's attention? Why did they decide to investigate him? I'm sure there must be an explanation in the record as to that. What does the record disclose about that? Your Honor, I'm not entirely sure what was the genesis of the investigation aside from the fact that it began in 2012. What was the trigger? What was the red flag that led to the government to open this investigation? I would have to go back and double check. I'm sure it's in the record, but that's okay. Okay. If the panel has no further questions, the government submits its case on the briefs and asks for affirmation. Thank you. Thank you. Yes, Your Honors. I just wanted to address briefly two points brought up by the government and based on the questions that this Court was asking. As far as whether or not Mr. Vasquez was living in Colombia, I think that that's not something. It's relevant maybe if the jury wants to infer as to the pictures, but there's no limitation on his disability of where he can live. He's perfectly allowed to live in Colombia. He's allowed to live in the Dominican Republic. He's allowed to live in Russia. As long as he's not in the country. Does that have something to do with the issue of whether the photographs have to do with Colombia? I think whether or not the photographs were taken in Colombia or in Puerto Rico, that's not the point the defense counsel's objections went to. They're trying to say that what the witness is testifying that he's doing in those photos without any personal knowledge or any corroborating knowledge is the issue, not where they were taken. He was perfectly within his limits to live in Colombia, and he does tell Cassandra Klein, the undercover agent, it's in the 2013 interview, yes, I lived in Colombia. He does not specify years, and he does not talk about motorcycle riding or activities. He just specifies that he lived there. So is it your argument that unless the government brought in his ex-wife or ex-girlfriend who supposedly was on the trip and could explain what was going on, absent that kind of testimony the government was not entitled to introduce these pictures? That seems to be the logic of your argument. Yes, Your Honor. Who else could explain what was going on? We would like this court to adopt a test that when social media is being entered into evidence that the government has to do much more than what was done in this picture. There should be some witness, the ex-girlfriend, someone that was there, to corroborate what's going on in these photos. Context matters. A picture says a thousand words. If you're going to put an age… What's going on in these photos, as far as I'm concerned, is he's riding a motorcycle, which I think what the government has to prove. Sure, but could a witness have gotten up there and said, we ride for 20 minutes at a time and then we take breaks because my ex-husband suffers back spasms. I mean, the government is insinuating to the jury here and actually has testimony on the record that he's going on these long cross-country hauls. That's extremely unfairly prejudicial and is taking the pictures out of context. The government's position is that if he were disabled to the extent that he says he's disabled or the doctor said he's disabled, he shouldn't have been able to ride a motorcycle, period, whether it was for one minute or three hours or all day. Well, Dr. Sign testified, as I explained earlier, that riding the motorcycle that he was allowed to. And I think… But that was conflicting, so the jury had to make a determination as to credibility on that point. Yes, Your Honor, and something I want to point out as to the harmless error argument. Excuse me, before you go on that. Yes, sir. Did you say some of the photographs show luggage in the back of his motorcycle? It appears to be like a black bag on the back of the motorcycle. Well, what would you call it? Luggage? Black bag? I guess, yeah, luggage, black bag. The fact that he's carrying all this, whatever it is, is that usually done by somebody who's going to take just a 20-minute ride? That was something that was argued by the government in closing. Your Honor, our concern here is that this is creating a slippery slope. And if I may close my point, this is creating a slippery slope. To allow the government, going forward, to just go onto social media and do, maybe in Mr. Vasquez's case, someone who got a probation sentence, it's not as a severe consequence. But to ask the court to ignore authentication rules of evidence is a dangerous path forward. And just briefly, if I could address the harmless error. Justice Tafel had a question before I interrupted her. Let me say, usually the foundation is, is this a fair and accurate, authenticating a photograph, is this a fair and accurate representation of the defendant on X day? And so I guess I'm trying to figure out in terms of the test that you want us to adopt, what's missing here. Your Honor, I would say what's missing here. Particularly since you're conceding that, that you're not contesting that it shows him on a motorcycle, and it sounds like you're coming close to conceding that it's in Columbia, and that it may be during the relevant time period. I'm trying to figure out what, what then is missing here. Well, it's not the relevant time period for the indictment. And we do dispute the government's argument that you can take pictures from past years of their life and put them as to the menstrual. But assuming, assuming we. . . Sure, if it's from 2013. Yeah. Your Honor, I would urge the court not to adopt this test. But worst case scenario, if you're going to sit a witness up there. . . But what's the test you want us to adopt? I would like the court to adopt something that's been adopted by the majority of the circuits, which is the second, the third, the fourth, and the fifth, is that the government brings some sort of custodial record from Facebook or something like an IP address to connect this address to someone that matters in this case, and then extrinsic evidence to corroborate the context of the picture. In the Farad case, even, the Sixth Circuit case cited by the government in its brief, the government went above and beyond. And not only that, they were able to sit a witness on the witness stand to testify about everything that was going on in those photos. That's something that was not done here. In the Farad case, that was a 922G, and the defendant was holding a gun in the photograph. And they actually sat the FBI agent to enter that photo into evidence, and he was able to corroborate, I know this is the defendant and I know this is his apartment because I've intervened with him there on multiple occasions, and he corroborated the apartment. They sat a guns expert on the stand to corroborate that this is in fact a real gun to address the very concerns with social media evidence that we're bringing before the court. And a final quick point, Your Honors, as to the harmless error. This was a case that was six days long, and the jury deliberated for four days. The Allen charge was read twice. They sent out 11 notes, and one night they deliberated until 10.30 p.m. This was not a slam dunk for the government. In fact, the first question that the jury sent out was to please explain what exactly were the false statements that Mr. Vasquez made in the 2013 interview. I think that the photos went to the heart of this case. This isn't a slam dunk, one-hour conviction. This was something the jury deliberated over for four days and went until 10.30 at night on one occasion. And the Supreme Court has held that we can look at jury deliberations, the notes sent out, the kind of questions that were asked in determining whether or not this was harmless error. And in this case, these 21 Facebook photos were not harmless error. Thank you, Your Honors. Thank you.